Joseph N. GRANO, Jr., et al.

v.

Marion S. BARRY, Jr., Mayor, District of Columbia, et al., Appellants,

Oliver T. Carr, Jr., et al.

Joseph N. GRANO, Jr., et al.

v.

Marion S. BARRY, Jr., Mayor, District of Columbia, et al.

Oliver T. Carr, Jr., et al., Appellants.

Nos. 83–1975, 83–1976.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 7, 1984.

Decided May 4, 1984.

---

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Washington, D.C. (at the time the brief was filed), and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief for Barry, et al., appellants in No. 83–1975.

Richard A. Green, Washington, D.C., with whom Norman M. Glasgow, Whayne S. Quin, Louis P. Robbins, C. Francis Murphy, and George H. Beuchert, Jr., Washington, D.C., were on the brief for appellants in No. 83–1976. William Joseph H. Smith, Washington, D.C., also entered an appearance for appellants, Carr, et al.

William A. Dobrovir and David L. Sobel, Washington, D.C., were on the brief for appellees in Nos. 83–1975 and 83–1976.

Before WALD, BORK and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

Mayor Marion S. Barry, Jr., other District of Columbia officials, and Oliver T. Carr, Jr. and George H. Beuchert, Jr., trustees, appeal from a district court order enjoining the District of Columbia from issuing a permit for the demolition of Rhodes Tavern and a permit for the construction of a new building. The injunction preserved the status quo pending the outcome of a referendum on an initiative to preserve the Tavern and, in the event the initiative passed, until the procedures contemplated in the initiative should be concluded. While this appeal was pending, the initiative passed. Consequently, as to the issues raised by the issuance of an injunction pending a referendum, we hold that the case is now moot. Regarding the issues raised by continuation of the injunction after the initiative passed, we hold that there is no basis in federal law for the order and, further, that it would be an abuse of discretion for the federal court to retain jurisdiction over any local law issues. We therefore remand to the district court with directions to dissolve the injunction and dismiss the case.

## I.

Rhodes Tavern, in downtown Washington, D.C., was constructed between 1799 and 1801. Though the building has been extensively altered over time and most of it was razed in 1957, it is regarded as an historical landmark. In 1977, the Oliver T. Carr Co., a real estate developer, and the real party in interest here, proposed to build an office and retail complex on a site including the land now occupied by Rhodes Tavern. There followed complex and lengthy discussions and negotiations involving the Carr Co., the District, and local preservation groups. These and other aspects of the procedures required of the developer are set out in the opinion of the District of Columbia Court of Appeals in *Citizens Committee to Save Historic Rhodes Tavern v. District of Columbia*

*Department of Housing & Community Development*, 432 A.2d 710, *cert. denied,* 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590 (1981). It will suffice to say here that the Carr Co. filed applications for permits to relocate or demolish Rhodes Tavern and for construction on the site. Since the Tavern is classified as a Category II landmark structure under the District of Columbia Historic Landmark and Historic District Protection Act of 1978, the Carr Co.'s applications were referred to the Joint Committee on Landmarks. That Committee recommended that the Mayor's Agent hold a public hearing. After hearings on three days, during which she heard 28 witnesses and received 84 exhibits in evidence, the Mayor's Agent on February 11, 1980, found that the permits were necessary to allow the construction of a project of special merit (the finding required to permit demolition or relocation) and ordered the issuance of the permits.

The Citizens Committee to Save Historic Rhodes Tavern petitioned the D.C. Court of Appeals for review. Stating that a balancing of historical and developmental values was required, the court held that the Mayor's Agent had performed that task and affirmed her decision. *Citizens Committee,* 432 A.2d 710.

The demolition permit could not be issued immediately because D.C.Code Ann. § 5–1004(h) (1981) requires that the demolition and construction permit issue at the same time. The final drawings required for the construction permit had not been submitted. The developer also was seeking a special exception to the zoning requirements. The special exception has been granted and the permits for demolition and construction have been ready for issuance for some time. While the Carr Co. was attempting to obtain the permits and the special exception, however, appellee Grano and other members of the Citizens Committee to Save Historic Rhodes Tavern drafted an initiative (Initiative No. 11) to secure the building's preservation.[1]

---

1. The initiative declared it to be the public policy of the District of Columbia "to support, advo-

cate and promote the preservation, restoration and reuse of Rhodes Tavern on its present

The District of Columbia Board of Elections and Ethics certified that Initiative No. 11 had met the requirements for inclusion on the ballot for the November 3, 1983 election. The day after the District's Board of Zoning Adjustment issued a written opinion granting Carr a special exception, the last prerequisite for issuance of construction and demolition permits, appellees brought suit in the district court against officials of the District seeking a temporary restraining order and a preliminary and permanent injunction prohibiting issuance of the demolition and construction permits. Trustees Carr and Beuchert intervened as parties defendant.

The district court granted plaintiffs' motion for summary judgment, holding that plaintiffs' right to vote would be violated were the permits for demolition and construction issued prior to the election. To forestall such an occurrence, the district court granted a permanent injunction against the District's issuance of those permits

> (1) Until after the November 8, 1983, election in the District of Columbia and the certification of the result of the vote on Initiative No. 11....

The court further held that the issues raised by defendants—the constitutionality and statutory validity of the proposed initiative—were not ripe for adjudication. Nevertheless, the court ordered that if the initiative were passed by majority vote and enacted into law, then the injunction should remain in effect

> [u]ntil the procedures contemplated in Initiative No. 11 for the preservation of · Rhodes Tavern are concluded.

While the injunctive was in effect, the referendum was held, and the initiative received a majority of YES votes. On January 24, 1984, the Chairman of the District

of Columbia Council transmitted the initiative to the Speaker of the House of Representatives and the President of the Senate for a thirty-day period of Congressional review. That period has elapsed and the initiative is now law.

## II.

We consider first the threshold question whether the issues presented by the granting of an injunction pending a referendum are now moot. We hold that they are. The referendum having been held, these issues have "lost ... [their] character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." *Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969). This case does not fall within the "capable of repetition, yet evading review" exception. *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). In *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975), the Supreme Court held that this exception applies only where a case satisfies two criteria:

> (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

The case before us clearly fails to meet the second part of the test, the "capable of repetition" requirement. Under *United States v. W.T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), a case is moot if "there is no reasonable expectation that the wrong will be repeated." *Id.* at 633, 73 S.Ct. at 897. In this case, there are too many variables to allow a prediction that appellants will again be subjected to action of this sort. One

---

site...." More specifically, the initiative mandated creation of an advisory board to "negotiate with the owners of Rhodes Tavern to determine whether said owners will enter into an agreement to fulfill the objectives declared in" the initiative. Should those negotiations fail, the initiative required the advisory board to report to the Mayor on other ways of achieving these goals. Moreover, the advisory board was

obligated to apply Category I Landmark status for Rhodes Tavern, which, under some interpretations, would require the Tavern's preservation. Initiative Measure No. 11 By the People of the District of Columbia (Joint Appendix, Part C); *compare* Brief for District of Columbia Appellants at 6–10 and Brief for Appellees at 7. Indeed, the substantive effect of the initiative appears to be a matter of dispute.

would have to suppose that the Carr Co. would again attempt to demolish a District of Columbia building with alleged historical significance, that the Joint Committee on Landmarks would approve, that an initiative to save the building would once more be put to a referendum, and that a trial court would issue an injunction preventing demolition pending the outcome of the referendum. Appellants have adduced no evidence creating a reasonable expectation that any of these things will reoccur, much less than all of them will. The cases appellants rely upon involve continuing statutory schemes that would predictably have the same effect upon plaintiffs in the future. *See, e.g., Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).

A closer parallel to the present case is *Brockington v. Rhodes*, 396 U.S. 41, 90 S.Ct. 206, 24 L.Ed.2d 209 (1969), where the Supreme Court found the case moot, in part because the requested relief had been tied to a particular election that was over. Because it does not fall within the "capable of repetition, yet evading review" exception, we hold that appellants' challenge to that part of the injunction in effect prior to the election is now moot.[2] It follows, of course, that this part of the judgment below must be vacated. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950).

### III.

█ There remains the question of the injunction forbidding issuance of the demolition and construction permits until the procedures contemplated in the initiative are completed. We are at something of a disadvantage in reviewing this aspect of the judgment because the district court's opinion discusses only the supposed constitutional right to vote in an upcoming referendum as a reason to enjoin the issuance of the permits prior to the referendum. There is no discussion of the legal basis for enjoining the issuance of the permits after

the referendum until the procedures contemplated by the initiative are completed.

So far as we can tell, however, this latter injunction was issued in response to a claim made under federal law. The broad language of the complaint permits the inference that plaintiffs alleged that their federal constitutional right to vote included the right to have their vote rendered meaningful by federal court enforcement of the District's statute. Moreover, the only legal argument made in plaintiffs' motion for summary judgment and the only discussion of law in the district court's opinion was of federal constitutional law. We conclude that the post-referendum aspect of the order rested upon a federal claim. That being so, we reverse the judgment.

The cases on which appellees rely involve challenges to procedural aspects of state electoral systems such as unduly restrictive fees and percentage-of-the-electorate requirements for individuals and parties seeking ballot positions. *See, e.g., Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1978); *Kusper v. Pontikes*, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *Georges v. Carney*, 546 F.Supp. 469 (N.D.Ill.1982); *Citizens Against Legalized Gambling v. District of Columbia Board of Elections & Ethics*, 501 F.Supp. 786 (D.D.C.), *aff'd per curiam*, No. 80-2251 (D.C.Cir. Oct. 20, 1980). These cases have little to do with the question before us. It is one thing for the federal Constitution to guarantee a right of access to a state electoral process that has been restricted by state law. It is quite another to assert that the federal Constitution guarantees that state officials will act in conformity with state law. In the former case, no relief is available under state law; in the latter, complete relief is available. In the former, an official policy of a state is challenged—in the latter no official policy of the state is challenged; rather,

---

**2.** Of course, our dismissal of this part of the appeal as moot is not dispositive as to the issue

of attorneys' fees raised at oral argument. *See Williams v. Alioto*, 625 F.2d 845 (9th Cir.1980).

the state's policy is sought to be vindicated. Vindication of state policy ought, as an initial matter, to take place in state courts. Perhaps for these or similar reasons, no case cited to us or of which we are aware has ever held that the constitutional right to vote in state elections extends so far as to include a right to control the behavior of state officials under state law. To the contrary, the Supreme Court has held that an elected official's threatened violation of a state law does not automatically raise a federal claim. *See Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943); *Home Telephone & Telegraph Co. v. City of Los Angeles,* 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913); *Barney v. City of New York,* 193 U.S. 430, 24 S.Ct. 502, 48 L.Ed. 737 (1904). If official violations of such laws automatically created federal causes of action, a great many cases involving only local issues that were fully remediable under state law would be brought in federal courts.

We have held that one part of the injunction is moot and that the other cannot be justified in terms of federal law and must be dissolved. The only question remaining is whether any further proceedings may be held in the district court. We think not.

▮ The only theory that might sustain continuing federal jurisdiction is that appellees might be able to adduce a basis for an injunction under District of Columbia law and that the district court could entertain such a request as a matter of pendent jurisdiction. Ordinarily, the question of whether the federal courts should retain jurisdiction over pendent issues after the federal issues have disappeared from the case lies within the discretion of the district court. *See Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). That discretion is not, however, unbounded, and we think it would be an abuse of discretion for the district court to retain

jurisdiction in this case. Since no right to an injunction under District of Columbia law was pleaded or argued, entertaining such a claim now would be somewhat like initially taking jurisdiction over a local law issue when there is no federal claim to which it could be pendent. But even if this were not so and a local claim could be regarded as pendent, no such claim should be entertained by the district court.

▮ In general, "principles of comity and the desirability of a 'surer-footed reading of applicable law' support the determination of state claims in state court." *Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768, 769 (D.C.Cir.1982) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)).[3] Determination by the state court is especially important where the case involves "novel and unsettled" issues of state law. 680 F.2d at 775. *Cf. id.* at 769 (district court found to have abused its discretion in exercising pendent jurisdiction over local claims where all federal claims had been resolved before trial and court decided novel and difficult issues of local law). Here, the law in question is new, its meaning ambiguous and sharply disputed. *See* note 1, *supra.* Moreover, the district court should not retain jurisdiction because this case directly implicates the processes by which a locality governs itself. Appellees' remedy, if any, lies in the courts of the District of Columbia.

For these reasons we remand with orders to vacate the judgment underlying the injunction that has become moot, dissolve the remaining injunction, and dismiss the complaint.

*So ordered.*

---

**3.** Although the District of Columbia is constitutionally distinct from the states, it may nevertheless be treated as a state for present purposes. *Cf. Wachovia Bank & Trust Co. v. National Student Marketing Corp.,* 461 F.Supp. 999, 1010 (D.D.C.1978), *rev'd on other grounds,* 650 F.2d 342 (D.C.Cir.1980), *cert. denied,* 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981) (following *Gibbs* ); *National Tire Wholesale, Inc. v. Washington Post Co.,* 441 F.Supp. 81, 88 (D.D.C. 1977), *aff'd mem.,* 595 F.2d 888 (D.C.Cir.1979) (same); *Houlihan v. Anderson-Stokes, Inc.,* 434 F.Supp. 1324, 1329 (D.D.C.1977) (same).