## BROCKINGTON *v.* RHODES, GOVERNOR
## OF OHIO, ET AL.

No. 31.  Argued October 22, 1969—Decided November 24, 1969

*Benjamin B. Sheerer* argued the cause for appellant. With him on the briefs was *Ralph Rudd.*

*Robert D. Macklin,* Assistant Attorney General of Ohio, argued the cause for appellees.  On the brief were *Paul W. Brown,* Attorney General, *Charles S. Lopeman,* First Assistant Attorney General, and *Julius J. Nemeth,* Assistant Attorney General.  *John T. Corrigan* and *John L. Dowling* filed a brief for appellees Cipollone et al.

PER CURIAM.

The appellant sought to run in the November 1968 election as an independent candidate for the United States House of Representatives from the Twenty-first Congressional District of Ohio.  His nominating petition bore the signatures of 899 voters in the congressional district, a little over 1% of those in the district who had voted in the gubernatorial contest at the last election. The Board of Elections ruled that the appellant's petition was insufficient to put his name on the November ballot, because it did not contain the signatures of 7% of the

qualified voters, as Ohio law then required.[1] The appellant petitioned the Court of Common Pleas for a writ of mandamus, challenging the 7% requirement as "unreasonably high and excessive, . . . disproportionate when compared to the 100 signatures required for party candidates,[2] . . . arbitrary and capricious, . . . [and] an invidious discrimination without any relationship to constitutionally justified ends . . . ." He urged as the proper standard for determining the sufficiency of his nominating petition the 1% requirement that had prevailed for over 60 years until the enactment of the 7% rule in 1952. He prayed for an immediate order restraining the Board of Elections from printing the election ballots; also for a writ of mandamus commanding the Board "to certify the sufficiency of relator's nominating petition" and directing the appellees "to do all things necessary to place relator's name upon the ballot as an independent candidate for United States House of Representatives from the Ohio Twenty-First Congressional District in the November 5, 1968, general election . . . ." His suit did not purport to be a class action, and he sought no declaratory relief.

On August 22, 1968, the Court of Common Pleas denied the writ of mandamus. On October 1 the Court of

[1] Ohio Rev. Code Ann. § 3513.257 (Supp. 1968) provided in pertinent part:

"The nominating petition of an independent candidate for the office of . . . district representative to congress, shall be signed by not less than seven per cent of the number of electors who voted for governor at the next preceding regular state election for the office of governor in the district."

[2] Under Ohio law a candidate for the nomination of a political party to the office of United States Representative must, in order to enter the *party primary*, obtain from the party membership within the congressional district the signatures of either 100 voters or 5% of those who voted in the last gubernatorial election, whichever is less. Ohio Rev. Code Ann. § 3513.05 (Supp. 1968).

Appeals for the Eighth Judicial District affirmed that judgment, and on October 23 the Supreme Court of Ohio dismissed the appeal for want of a substantial constitutional question. The appellant then appealed to this Court pursuant to 28 U. S. C. § 1257, and we noted probable jurisdiction, 393 U. S. 1078. While the appeal was pending here, Ohio amended the controlling statute, effective October 30, 1969, reducing the signature requirement from 7% to 4%.

We do not think the recent statutory amendment has rendered this case moot. For the appellant has consistently urged the unconstitutionality of any percentage requirement in excess of the 1% that Ohio imposed prior to 1952, and he obtained the signatures of only about 1% of the voters in his district. He thus could not have won a place on the ballot even under the statute as currently written. Cf. *Hall* v. *Beals, post,* p. 45.

Rather, in view of the limited nature of the relief sought, we think the case is moot because the congressional election is over. The appellant did not allege that he intended to run for office in any future election. He did not attempt to maintain a class action on behalf of himself and other putative independent candidates, present or future. He did not sue for himself and others similarly situated as independent *voters,* as he might have under Ohio law. Ohio Rev. Code Ann. § 2307.21 (1953). He did not seek a declaratory judgment, although that avenue too was open to him. Ohio Rev. Code Ann. §§ 2721.01–2721.15 (1953).

Instead, he sought only a writ of mandamus to compel the appellees to place his name on the ballot as a candidate for a particular office in a particular election on November 5, 1968. In Ohio mandamus is an extraordinary remedy, available to a petitioner only on a showing of clear legal right. *State ex rel. Gerspacher* v. *Coffinberry,* 157 Ohio St. 32, 104 N. E. 2d 1; *State ex rel.*

*Stanley* v. *Cook,* 146 Ohio St. 348, 66 N. E. 2d 207. The writ does not lie to review the determination by a Board of Elections that a candidate is ineligible to assume the office he seeks or that his petition is invalid, in the absence of allegations of fraud, corruption, abuse of discretion, or a clear disregard of statutes or applicable legal principles. *State ex rel. Flynn* v. *Board of Elections,* 164 Ohio St. 193, 129 N. E. 2d 623; cf. *State ex rel. Hanna* v. *Milburn,* 170 Ohio St. 9, 11, 161 N. E. 2d 891, 893. In the instant suit the Court of Common Pleas ruled that the appellant "must not only establish that the act which he seeks to compel respondents to perform is one that they are constitutionally bound to perform by virtue of their offices, but also that he, the relator, has a clear right to have the duty enforced." The court, without passing on the merits of the legal issues raised by the parties, found that the appellant had not established a clear legal right to the writ on the basis of all the evidence.

It is now impossible to grant the appellant the limited, extraordinary relief he sought in the Ohio courts. Accordingly, the judgment of the Supreme Court of Ohio must be vacated, without costs in this Court, and the cause remanded for such proceedings as that court may deem appropriate.

*It is so ordered.*