CENTRAL KENTUCKY PRODUCTION CREDIT ASSOCIATION, et al.,
Appellants,

v.

UNITED STATES of America, et al.

No. 86–5653.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 1, 1987.
Decided May 13, 1988.

John C. Deal, Columbus, Ohio, with whom Carol H. Fishman, Washington, D.C., was on the brief, for appellants.

P. John Owen, with whom Robert M. Kroenert and Sarah W. Hays, Kansas City, Mo., were on the brief, for appellee Farm Credit System Capital Corp.

Mark B. Stern, Atty., U.S. Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Robert S. Greenspan, Atty., U.S. Dept. of Justice, Washington, D.C., were on the brief, for appellees U.S., et al.

Mac Asbill, Jr. and Warren N. Davis, Washington, D.C., entered appearances for appellee Farm Credit Corp. of America.

Cornelius B. Kennedy, Washington, D.C., was on the brief for amici curiae Alfred E. Schlepper, et al., urging reversal.

Before BUCKLEY and WILLIAMS, Circuit Judges, and AUBREY E. ROBINSON, Jr.,* Chief Judge, United States District Court for the District of Columbia.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Appellants are five lending institutions within the nation's troubled farm credit system. These production credit associa-

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

tions appeal a Memorandum Order entered on October 3, 1986, in which the district court declined to enjoin the application of the Farm Credit Amendments Act of 1985, 12 U.S.C. §§ 2216–16k, 2152 (Supp. III 1985) ("1985 Act"), and its implementing regulations. The legislation required appellants to buy approximately $6 million of stock in the Farm Credit System Capital Corporation, with the money to be used to help hard-pressed farm credit institutions.

On January 6, 1988, subsequent to oral argument, President Reagan signed into law the Agricultural Credit Act of 1987, Pub.L. No. 100–233, 101 Stat. 1568 ("1987 Act"). Among other things, the new statute plowed under the Farm Credit System Capital Corporation and repealed the assessment program challenged by appellants. Congress created a similar program in its place, under which appellants were directed to invest approximately $12 million. Appellants paid the money on March 7, 1988, but have challenged the new statute in a separate proceeding currently pending in the district court.

As appellants have paid the new assessments in full, their request for preliminary relief is now academic. With respect to the merits, we conclude that the enactment of the 1987 Act moots appellants' challenge to the legality of the 1985 Act. While a statutory change normally will not moot a controversy unless the new statute cures the problems that led to the suit, appellants have chosen to litigate their objections to the 1987 Act in a separate forum; we leave those challenges to the forum chosen by appellants and conclude, with respect to the 1985 Act, that there is no remaining controversy before the district court. On the other hand, certain issues concerning the legality of a Farm Credit Administration directive and of certain regulations implementing the 1985 Act may well remain alive. Accordingly, we leave disposition of these issues with the district court.

## I. BACKGROUND

### A. Statutory Background

In 1916, Congress created the Farm Credit Administration ("FCA") to oversee the nation's farm credit system. The FCA is an independent regulatory agency that does not itself make, subsidize, or guarantee agricultural loans. Instead, borrowers obtain credit from a national network of privately owned banks and associations. Appellants are five intermediate-level lending institutions within this system.

In response to a farm crisis that threatened the stability of the credit network, Congress enacted the Farm Credit Amendments Act of 1985. The 1985 Act authorized the FCA to charter the Farm Credit System Capital Corporation ("Capital Corporation") as a vehicle for refinancing troubled credit institutions. 12 U.S.C. § 2216 (Supp. III 1985). In turn, the Act empowered the Capital Corporation to "require other institutions of the Farm Credit System, through purchase of stock in, or obligations of, the Capital Corporation, to make funds available to the Capital Corporation to enable it to make financial assistance available to institutions of the Farm Credit System...." 12 U.S.C. § 2216f(a)(14) (Supp. III 1985).

To implement this program, the 1985 Act authorized the FCA to promulgate regulations governing the mandatory purchases. 12 U.S.C. § 2216f(a)(15) (Supp. III 1985). The regulations were to incorporate a list of criteria set forth by Congress to insure that the assessments would not jeopardize the financial health of credit system institutions, and that the burden would be shared equitably. *Id.* Congress also authorized the FCA to require the institutions to achieve and maintain adequate capital levels, and to issue directives to any institution that failed to maintain capital at or above its required level. 12 U.S.C. § 2154 (Supp. III 1985).

The FCA laid the groundwork for the assessment program in early 1986. On February 14, the FCA issued Capital Directive No. 1 advising farm credit banks and associations that the FCA was drafting regulations setting capital adequacy requirements and that, in the meantime, all credit institutions were considered to be "at the level of minimum adequacy." The directive also barred them from taking

"any action outside the normal course of business that has the effect of dissipating the institution's existing capital resources...." Exhibit "A" in Appendix to Brief for Appellee Capital Corporation. On February 24, the FCA chartered the Farm Credit System Capital Corporation. *See* Farm Credit System Capital Corporation Organization & Funding, 51 Fed.Reg. 21,-332 (1986) (reference to issuance of charter). In March, the FCA promulgated regulations governing the organization and operation of the Capital Corporation and outlining a detailed set of criteria for determining which farm credit institutions would be directed to purchase Capital Corporation stock. 12 C.F.R. § 611.1140–42 (1986).

## B. *Litigation Background*

Once the regulations were in place, the Capital Corporation sent assessment notices to those institutions required to purchase Capital Corporation stock. Appellants declined to pay and filed an action for declaratory judgment and injunctive relief with the United States District Court for the District of Columbia. They argued that the assessment program constituted a "taking" of private property without just compensation in violation of the Fifth Amendment, that Capital Directive No. 1 was adopted in violation of the Administrative Procedure Act, and that the Capital Corporation's implementing regulations were both substantively and procedurally invalid. On September 10, 1986, appellants filed a motion for a preliminary injunction to block the assessments.

The district court denied appellants' motion. *Central Kentucky Production Credit Ass'n v. United States*, No. 86–2056 (D.D.C. Oct. 3, 1986), Joint Appendix ("J.A.") at 428. Applying the standard outlined in *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C.Cir.1977), the court concluded that appellants had failed to demonstrate that they were likely to prevail on the merits, and had failed to do more than "speculate as to the possibility of irreparable harm to themselves" if the motion were not granted. J.A. at 430.

On appeal, appellants vigorously disputed the district court's analysis. With respect to the likelihood of irreparable harm, appellants noted that they were being assessed nearly $6 million, without "any hope that these funds can ever be repaid." Brief for Appellants at 18. With respect to the likelihood of success on the merits, appellants argued that the assessment program is plainly illegal, for any of three reasons: (1) the program constitutes an uncompensated taking in violation of the Fifth Amendment; (2) the regulations governing mandatory stock purchases fail to incorporate adequately the statutory criteria for calculating assessments; and (3) the FCA violated the Administrative Procedure Act, 5 U.S.C. § 553(b) (1982) ("APA"), by issuing Capital Directive No. 1 and the Capital Corporation's implementing regulations without providing appellants proper notice or opportunity to comment.

Appellants argued that these flaws, at minimum, justified reversing the district court's denial of the preliminary injunction. More broadly, appellants asserted that the record was complete and urged us to hold the assessment program unlawful on the merits.

## C. *The Agricultural Credit Act of 1987*

The statutory and factual backdrop to this dispute has changed considerably since oral argument. The Agricultural Credit Act of 1987, signed into law on January 6, 1988, has effectively dismantled the particular assessment program challenged by appellants. Section 207(a) of the 1987 Act repeals 12 U.S.C. §§ 2216–16k, 2152, which provided for the establishment of the Capital Corporation and the mandatory stock purchases. Section 201–6.0(a) requires the FCA to revoke the charter of the Capital Corporation within fifteen days of the passage of the new legislation. Section 301(a)(1)(A) requires the FCA to issue regulations establishing capital adequacy standards within 120 days of passage.

In place of the Capital Corporation, the 1987 Act provides for the establishment of the Farm Credit System Financial Assist-

ance Corporation ("Financial Assistance Corporation"), which is authorized to issue bonds guaranteed by the Secretary of the Treasury as a means of funding capital assistance programs. Section 201–6.26. To supply an initial source of funds to back such bonds in the event of default, section 201–6.29 requires certain institutions to make a one-time purchase of stock in the Financial Assistance Corporation, based on formulas outlined in sections 201–6.-29(a)(1)(A) and (B). The money obtained from the forced purchases is to be placed in a trust fund until all bonds have been paid (section 201–6.25(b)); any funds remaining will then be transferred to the Farm Credit System Insurance Corporation (section 201–6.31(b)).

On February 18, 1988, appellants were directed to buy approximately $12 million worth of stock under the new program. Appellants asked us to stay the assessments, which we declined to do. *Central Kentucky Production Credit Ass'n v. United States*, No. 86–5653 (D.C.Cir. Mar. 12, 1988). Appellants also sought to challenge the 1987 program by filing a separate suit in the U.S. District Court for the District of Columbia. *Colorado Springs Production Credit Ass'n v. Farm Credit Administration*, C.A. No. 88–0574 (D.D.C. filed Mar. 3, 1988) [available on WEST-LAW, 1988 WL 23252]. Section 201–6.29(e) of the 1987 Act provides that "no suit or proceeding shall be maintained to enjoin or otherwise prevent ... the purchase of stock required under this section, unless the amount of stock required to be purchased under this section has been purchased and paid for in full." In order to satisfy this requirement, appellants paid the assessments on March 7, 1988.

We directed the parties to submit supplemental briefs outlining the impact of the 1987 Act on the current action. Neither party discussed appellants' request for a preliminary injunction. Rather, the government asked that the entire case be dismissed as moot because appellants "will never be subject to assessment by the defunct Capital Corporation under the repealed statutory provision." Second Supplemental Brief for Federal Appellees at 3.

Although appellants are no longer being assessed under the 1985 Act, they argue that the case is not moot because there is no substantial difference between the 1987 and 1985 Acts and because certain of the 1985 Act's implementing regulations remain in effect.

## II. DISCUSSION

The Constitution limits the exercise of judicial power to actual cases or controversies. U.S. Const. art. III, § 2. If a case is moot, there is no live case or controversy, and we can no longer exercise jurisdiction. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937); *Honig v. Doe*, —— U.S. ——, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988).

■ Although appellants have asked for a decision on the merits, this case is, first and foremost, an appeal from the denial of a preliminary injunction. Appellants, however, have no further basis for requesting preliminary relief. To begin with, there are no outstanding assessments left to enjoin: appellants do not claim they are still being asked to pay $6 million under the 1985 Act, and they have already paid the $12 million required under the 1987 Act. Further, while appellants asked the district court to enjoin defendants "from taking any action" pursuant to the 1985 Act or Capital Directive No. 1, they failed to establish that any action *other* than the actual taking of assessments would cause them irreparable harm of the sort required to justify a preliminary injunction. *See, e.g., Ambach v. Bell*, 686 F.2d 974, 986 (D.C.Cir. 1982).

It is irrelevant that appellants were required to pay their 1987 Act assessments under what might be termed statutory duress: if they had not paid the assessment, their access to the courthouse would have been barred by section 201–6.29(e) of the 1987 Act. Congress created the Hobson's choice confronting appellants by requiring that institutions must pay assessments before they challenge them. As our jurisdiction over assessments levied pursuant to

the 1987 Act is defined by that statute, we are bound by its limits, which appellants have not challenged in the current proceeding.

Having concluded that appellants have no valid claim to preliminary relief, we now turn to appellants' request that we address the merits of their substantive objections to the assessment program. This we decline to do. Furthermore, we believe that appellants' parallel challenge to the 1987 Act makes it unnecessary for the district court to take any further action with respect to certain of appellants' claims.

■ As a general rule, a statutory change will not moot a dispute unless it cures the problems that led to the suit. *See Brockington v. Rhodes*, 396 U.S. 41, 43, 90 S.Ct. 206, 207, 24 L.Ed.2d 209 (1969) (challenge to requirement that candidates obtain signatures of more than 1% of eligible voters not mooted by amendment reducing requirement from 7% to 4%); *see also Schall v. Martin*, 467 U.S. 253, 256 n. 2, 104 S.Ct. 2403, 2405 n. 2, 81 L.Ed.2d 207 (1984) (repeal of statute does not moot dispute where relevant provision reenacted in new statute). Nevertheless, because appellants have brought a separate action under the 1987 Act, we see no purpose in having the district court proceed with the instant suit except to the extent that the 1985 Act and its attendant directive and regulations, considered alone, have some continuing impact on appellants. *See Church of Scientology Flag Service Org. v. City of Clearwater*, 777 F.2d 598, 605 n. 19 (11th Cir. 1985) (ordinance moot where replaced by new ordinance that "is the subject of vigorous litigation between the same parties" in a separate proceeding), *cert. denied*, 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986).

In their supplemental brief, appellants do not dispute that the 1987 Act entirely repeals and replaces those sections of the 1985 Act challenged by appellants as an unconstitutional taking. While appellants argue that "[t]here is no substantial difference between the 1987 and the 1985 Act for purposes of this Court's constitutional analysis," Second Supplemental Brief for Appellants at 2, they are pursuing elsewhere their constitutional objections to the 1987 Act. As we leave that challenge to appellants' chosen forum, we work no unfairness in concluding that their constitutional objection to the 1985 Act is moot.

The government contends that we should also dismiss as moot appellants' objections to Capital Directive No. 1 and the 1985 Act's implementing regulations, which have not been renewed in appellants' more recent suit. We decline to do so. Capital Directive No. 1 states that it is to remain in effect until "rescinded" (Exhibit "A" in Appendix to Brief for Appellee Capital Corporation). While section 301(a)(1)(A) of the 1987 Act provides that the FCA must issue regulations establishing minimum capital adequacy standards within 120 days of passage, this does not guarantee that Capital Directive No. 1 will be rescinded, or that all of its terms will be superceded by the new regulations. Nor are we confident that the implementing regulations challenged by appellants have been rendered moot by the 1987 Act. While the regulations concern the operation of the now defunct Capital Corporation, they have been kept alive by section 901(b)(1) of the 1987 Act, which provides that regulations issued pursuant to amended provisions of the 1985 Act shall remain in effect "until the Farm Credit Administration issues regulations to implement such amendments, but in no event later than 180 days after such date of enactment." We leave to the district court the task of determining whether the regulations have any continuing practical effect in light of this section.

Because the government did not satisfy the heavy burden of demonstrating that these issues are moot, *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), we leave the case with the district court for disposition in light of the FCA's continuing efforts to implement the 1987 Act, and the impact such efforts might have on the current case. If appellants' objections to particular aspects of the 1985 assessment program remain viable, the district court may wish to consider consolidating such remain-

ing issues with appellants' ongoing challenge to the 1987 Act in the *Colorado Springs* litigation.

### III. CONCLUSION

Appellants' request for a preliminary injunction is moot because they have paid the assessments that were substituted for those they sought to enjoin. Appellants' broader attack on the constitutionality of the 1985 Act is also moot because the 1985 Act has no further effect and appellants have chosen to litigate their objections to its successor in a separate forum. We leave disposition of the remainder of the case with the district court.

*So ordered.*