**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 21, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AMERICAN CHARITIES FOR
REASONABLE FUNDRAISING
REGULATION, INC.; RAINBOW
DIRECT MARKETING, LLC,

      Plaintiffs - Appellants,

v.

DANIEL O'BANNON, Director of
the Utah Division of Consumer
Protection, Department of
Commerce for the State of Utah,

      Defendant - Appellee.

No. 17–4177

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:08-CV-00875-RJS)**
_____

Charles Nave, Charles H. Nave, P.C., Roanoke, Virginia, for Plaintiffs-Appellants.

Stanford E. Purser, Deputy Solicitor General, Office of the Utah Attorney General (Tyler R. Green, Solicitor General, and David N. Wolf, Assistant Attorney General, with him on the brief), Salt Lake City, Utah, for Defendant-Appellee.
_____

Before **BACHARACH**, **EBEL**, and **MORITZ**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This appeal turns on mootness. The issue arose when Utah changed its law governing professional fundraising consultants. Utah officials had interpreted its old law to require the plaintiff, Rainbow Direct Marketing, to register and obtain a permit in the State of Utah. Rainbow viewed these requirements as unconstitutional and unsuccessfully sued in district court. But during the appeal, Utah substantially revised its law, prompting officials to concede that the new restrictions do not apply to Rainbow. This change in the law renders the appeal moot.

I.   **Applying the old law, officials required Rainbow to comply with Utah's registration and permitting requirements.**

Rainbow is a New York company that advises certain charities on fundraising through direct mail. In 2007, Rainbow agreed to consult with a nonprofit group, Straight Women in Support of Homos (SWiSH), on a national campaign to raise funds through direct mail. Before the campaign could begin, however, Utah officials informed Rainbow that they interpreted state law to require Rainbow to register and obtain a Utah permit.

But Rainbow did not want to register or obtain a Utah permit; the permit fee is $250, and Rainbow believed that Utah overenforces its registration laws in a way that inflates the cost of charitable fundraising. Rainbow therefore declined to consult with SWiSH. Losing this opportunity prompted Rainbow to sue, challenging the constitutionality of

2

Utah's registration and permitting requirements. The district court granted summary judgment to the defendant, and Rainbow appealed.

**II.     Utah changes the law, and officials interpret the new law to relieve Rainbow of the need to register or obtain a permit.**

After Rainbow appealed, Utah changed its law. The new law states that a permit is required for a professional fundraising consultant only if it

- maintains a business in Utah or employs someone there or

- advises a charitable organization that is subject to general jurisdiction in Utah.

Utah Code Ann. § 13-22-5(4)(a) (eff. Mar. 19, 2018). Utah officials concede that (1) Rainbow does not maintain a business or employee in Utah and (2) SWiSH is not subject to general jurisdiction in Utah. Thus, Utah officials contend that Rainbow need not register or obtain a permit under the new law.[1]

**III.     This change in the law renders the appeal moot.**

Regardless of whether Utah officials are right, however, the change in the law renders the appeal moot.

Our jurisdiction is limited to "cases" or "controversies." U.S. Const. art. III § 2, cl. 1. When a case or controversy no longer exists, the appeal becomes moot and we lose jurisdiction. *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012); *McClendon v. City of*

---

[1]     No one pleaded that Rainbow maintains a business in Utah, employs someone in Utah, or currently advises a charitable organization subject to general jurisdiction in Utah.

*Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). The defendant bears the burden of showing a lack of jurisdiction due to mootness. *Citizen Ctr. v. Gessler*, 770 F.3d 900, 907 (10th Cir. 2014).

The defendant has satisfied this burden by showing Utah's change in the law. Rainbow denies that the appeal is moot, invokes exceptions to the mootness doctrine, and contends that refusing to consider the appeal on the merits would be unjust.

### A.  We reject Rainbow's arguments denying that the appeal is moot.

Rainbow denies that the appeal is moot, arguing that (1) the law has not materially changed and (2) disputes remain over damages, interest, and attorneys' fees. We reject these arguments.

### 1.  The change in the law is material.

Given the change in the law, Utah officials concede that Rainbow need not register or obtain a Utah permit. This concession would seemingly remove the alleged injury to Rainbow, rendering the appeal moot. *See N. Nat. Gas Co. v. Grounds*, 931 F.2d 678, 684 (10th Cir. 1991) ("When the law that controls a given situation is changed, litigation under the old law generally becomes moot.").

Rainbow considers the changes immaterial, insisting that the constitutional violations remain under the new law. For this contention, Rainbow points to opinions holding that a case or controversy continues

4

when a statutory change fails to substantially ease the burdens falling on the plaintiff.[2] But this contention overlooks the fundamental changes in the Utah law.

Rainbow's challenge to the new law turns on whether SWiSH is subject to general jurisdiction in Utah. Utah insists that SWiSH is not subject to general jurisdiction in the state, which would eliminate Rainbow's obligation to register or obtain a Utah permit. But Rainbow suggests that SWiSH may be subject to general jurisdiction, so the registration and permit obligations might remain.

This disagreement arises on appeal for the first time because the change in the law fundamentally altered the nature of the registration and permit requirements. These fundamental changes in the law moot the appeal even though Rainbow views the new version as unconstitutional.

---

[2]    *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993) ("The new ordinance may disadvantage them to a lesser degree than the old one, but . . . it disadvantages them in the same fundamental way."); *Brockington v. Rhodes*, 396 U.S. 41, 43 (1969) ("We do not think the recent statutory amendment has rendered this case moot. For the appellant has consistently urged the unconstitutionality of any percentage requirement in excess of the 1% that Ohio imposed prior to 1952, and he obtained the signatures of only about 1% of the voters in his district. He thus could not have won a place on the ballot even under the statute as currently written."); *Petrella v. Brownback*, 787 F.3d 1242, 1256 (10th Cir. 2015) ("Despite the changes to Kansas' system of school financing, the core elements challenged by plaintiffs remain."); *Hill v. Kemp*, 478 F.3d 1236, 1243 (10th Cir. 2007) ("Simply put, there remains a difference between how Oklahoma treats those who wish to obtain a Choose Life or Adoption Creates Families plate, on the one hand, and those who wish to obtain a license plate expressing support for abortion rights, on the other.").

*See Camfield v. City of Okla. City*, 248 F.3d 1214, 1223–24 (10th Cir. 2001) (concluding that amendments to a law rendered the appeal moot, despite the appellant's constitutional challenge to the new version, because the amendments eliminated the statutory basis for the challenge that had been brought in district court).

\* \* \*

The law materially changed, fundamentally altering the issues that had been presented in district court. This change in the law renders the appeal moot.

**2. The remaining disputes do not perpetuate a case or controversy.**

Rainbow also argues that a case or controversy continues because disputes remain over the availability of damages, interest, and attorneys' fees. We disagree.

As Rainbow argues, the statutory change would not eliminate a pre-existing dispute over damages. *Brown v. Buhman*, 822 F.3d 1151, 1169 (10th Cir. 2016). But Rainbow did not ask for damages in the most recent version of the complaint. Instead, Rainbow requested (1) a declaratory judgment that the old law, as applied to professional fundraising consultants, was unconstitutional, (2) an injunction against enforcement of the old law, and (3) an award of costs, interest, and attorneys' fees. Because Rainbow did not request damages, their theoretical availability

6

would not affect the issue of mootness here. *See id.* at 1169–70 (determining that a claim for damages could not affect mootness because damages had not been requested in the complaint).

Rainbow did request interest and attorneys' fees. But Rainbow never moved for an award of interest or attorneys' fees. Had Rainbow moved for interest or attorneys' fees, a case or controversy might have remained. *See Dahlem by Dahlem v. Bd. of Educ. of Denver Pub. Schs.*, 901 F.2d 1508, 1511 (10th Cir. 1990) ("While a claim of entitlement to attorney's fees does not preserve a moot cause of action, . . . the expiration of the underlying cause of action does not moot a controversy over attorney's fees already incurred." (citations omitted)). But without a motion for interest or attorneys' fees, the appeal loses any practical effect. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 478, 480 (1990) (stating that an interest in attorneys' fees, upon prevailing, does not "create an Article III case or controversy where none exists on the merits of the underlying claim" (citation omitted)). Thus, the appeal is moot unless a recognized exception applies.

**B.      The exceptions to mootness do not apply here.**

Rainbow contends that the appeal falls into one of two exceptions to the mootness doctrine: (1) capability of repetition and (2) voluntary cessation. These exceptions do not apply here.

Rainbow contends that the alleged wrong falls within the exception for wrongs "capable of repetition which will evade review." *Ind v. Colo. Dep't of Corr.,* 801 F.3d 1209, 1215 (10th Cir. 2015). This exception is narrow and applies only in exceptional situations. *See id.* To trigger the exception, Rainbow must show that "'(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.'" *Jordan v. Sosa*, 654 F.3d 1012, 1035 (10th Cir. 2011) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (alteration in original)). These elements do not apply here.

The first element requires Rainbow to show that the "allegedly unconstitutional behavior is *necessarily* of short duration." *Jordan*, 654 F.3d at 1036 (emphasis in original). Rainbow suggests that the unconstitutional behavior was too short because the litigation could not be completed. This suggestion is illogical. The issue of mootness arises only when something has changed, eliminating the impact on the plaintiff. If the exception applied whenever someone could not finish the litigation, no dispute would ever be considered moot.

Here the allegedly unconstitutional behavior is the adoption of a statute requiring professional fundraising consultants like Rainbow to register and obtain a permit in Utah. This behavior is not necessarily too

8

quick for resolution through litigation. As a result, the "capability of repetition" exception does not apply.

Rainbow also invokes the exception for voluntary cessation. Under this exception, a defendant's voluntary cessation of the challenged practice would not ordinarily render the appeal moot. *Citizen Ctr. v. Gessler*, 770 F.3d 900, 908 (10th Cir. 2014). It is true that Utah voluntarily enacted the new law. But when a defendant voluntarily ceases its conduct by changing the pertinent law, the exception applies only if the record shows "that the legislature intends to reenact the prior version of the disputed statute." *Camfield v. City of Okla. City*, 248 F.3d 1214, 1223–24 (10th Cir. 2001).

Rainbow argues that Utah's history reflects unconstitutional enforcement. The point is unclear, but presumably Rainbow is arguing that Utah could reinstate the old law or improperly enforce the new law. But Rainbow has not suggested a reason to believe that Utah would rescind or improperly enforce the statutory changes, and the Utah legislature has expressed no intent to reenact the old law. So the exception for voluntary cessation does not apply.

### C. Mootness cannot be disregarded based on notions of "manifest injustice."

Rainbow also argues that dismissal for mootness would create "manifest injustice." This argument overlooks the jurisdictional nature of mootness. *See* pp. 3–4, above. Because mootness is jurisdictional, we

cannot ignore the issue based on our notions of manifest injustice. *See*

*Bowles v. Russell*, 551 U.S. 205, 213 (2007) (stating that courts have "no

authority to create equitable exceptions to jurisdictional requirements");

*see also Utah ex rel. Utah Dep't of Envtl. Quality, Div. of Air Quality v.*

*EPA*, 750 F.3d 1182, 1186 (10th Cir. 2014) ("[W]e cannot expand our

jurisdiction to avoid hardships even when they are inequitable."). We

therefore cannot avoid mootness even if we considered the outcome

manifestly unjust.

**IV.    Because the appeal is moot, we must remand with instructions for the district court to vacate its judgment.**

When the appeal becomes moot based on the prevailing party's

unilateral action, we must vacate the district court's judgment. *Schell v.*

*OXY USA Inc.*, 814 F.3d 1107, 1117 n.5 (10th Cir. 2016). Here the

mootness resulted from the unilateral action of Utah, which had prevailed

in district court. We therefore dismiss the appeal as moot and remand with

instructions to the district court to vacate its judgment and dismiss the

case.[3]

---

[3]    The defendant "acknowledges that dismissing the appeal as moot may require vacating the district court's decision." Appellee's Resp. Br. at 28–29 n.10.