JILL PRYOR, Circuit Judge, dissenting:
In 2013, Congressman Jo Bonner, who represented Alabama's First Congressional District, announced that he would be retiring, and a special election was called to elect the district's next representative. James Hall, a 39-year-old United States Marine Corps veteran, sought to run as an independent candidate in the special election.
To be listed on the ballot, candidates had to obtain signatures from 5,938 registered voters in the district-a number equivalent to 3% of the votes cast in the district in the last gubernatorial election. See Ala. Code § 17-9-3(a)(3). There were only about four months between Congressman Bonner's announcement and the deadline for candidates to submit the required signatures. Within this relatively brief period, Hall decided to run, created a plan for collecting signatures, and began gathering them. Hall's time frame was even more compressed because the Secretary of State had no official form available for candidates to use to collect signatures for the special election, which meant that Hall could not begin gathering signatures until the Secretary of State approved his form. After receiving the Secretary of State's approval, Hall had only 106 days remaining to obtain the signatures. He sought signatures at community events, canvassed his network of friends and colleagues, and visited over 5,000 homes, but he was unable to collect the required number of signatures in time. As a result, Hall's name did not appear on the ballot for the 2013 special election.
In this appeal, Hall challenges the State of Alabama's application of its ballot access requirement to the 2013 special election. We previously held that Alabama's ballot access requirement was constitutional when applied to a regularly scheduled election, Swanson v. Worley , 490 F.3d 894, 896-97, 903 (11th Cir. 2007), but this appeal presents a different question: whether the ballot access requirement is constitutional when applied to a special election for a United States House of Representatives seat, where a candidate faces a considerably more compressed time frame for gathering signatures. Unfortunately, the majority avoids answering this important constitutional question by concluding-incorrectly, in my view-that Hall's claim is moot.
The Constitution limits our jurisdiction to actual cases or controversies. See U.S. Const. art. III, § 2, cl. 1. We lack jurisdiction to hear a moot case-one that "no longer presents a live controversy with respect to which the court can give meaningful relief." Al Najjar v. Ashcroft , 273 F.3d 1330, 1336 (11th Cir. 2001) (internal quotation marks omitted). But even if the controversy at hand is no longer live, we *1308 may retain jurisdiction under an exception to the mootness doctrine that addresses circumstances in which the issue is capable of repetition yet tends to evade judicial review. Kingdomware Techs., Inc. v. United States , --- U.S. ----, 136 S.Ct. 1969, 1976, 195 L.Ed.2d 334 (2016) (internal quotation marks omitted). This exception applies when (1) "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration," and (2) "there is a reasonable expectation that the same complaining party will be subject to the same action again." Id. (alterations adopted) (internal quotation marks omitted). No one disagrees that the first prong of this test is satisfied here.
The majority holds that the second prong of the test, the "same complaining party rule," is not satisfied here. Maj. Op. at 1304. The majority concedes that in the context of election challenges the same complaining party rule applies in a "relaxed" manner. Id. Despite failing to identify what kind of proof is required to satisfy the same complaining party rule in this context, the majority holds that Hall's proof was insufficient. See id. ("We are confident that the instant case does not satisfy the same complaining party rule, however relaxed the rule may be."). And it reaches this conclusion even though Hall testified that he plans to run as an independent candidate in a future election.
I disagree with the majority's application of the same complaining party rule in this case. Looking to Supreme Court precedent, I would conclude that in the unique context of an election-related challenge, we can infer from Hall's past candidacy alone that there is a reasonable expectation he will run as an independent candidate in a future special election and be subject to the same ballot access requirement. But even assuming that to satisfy the same complaining party rule a candidate is required to submit some additional evidence of his intent to run again, I believe Hall satisfied this burden with his testimony that he intends to run as an independent candidate in future elections, which would include special elections. I would hold that the case is not moot, address the merits, and affirm based on the district court's well-reasoned opinion. I respectfully dissent.
I. In Election Challenges, Courts Can Infer That Candidates Will Run in Future Special Elections from the Fact That They Ran in a Previous Special Election.
To satisfy the same complaining party rule, a plaintiff must show that "there is a reasonable expectation" that she "will be subject to the same action again." Kingdomware Techs. , 136 S.Ct. at 1976 (alterations adopted) (internal quotation marks omitted). In general, this means that a plaintiff must come forward with evidence of her future plans. But, as the majority concedes, the Supreme Court has applied this rule less strictly in the context of election-related challenges. See Storer v. Brown , 415 U.S. 724, 737 n.8, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). In this unique context, we can infer a reasonable expectation that a candidate will run in a future election and be subject to the same challenged ballot access restriction from the fact that she previously ran as a candidate.
The Supreme Court implicitly drew such an inference in Storer . There, several candidates challenged a California law that barred an individual who had recently been affiliated with a political party from being listed as an independent candidate on an election ballot. Id. at 726-27, 94 S.Ct. 1274. By the time the case made its way to the Supreme Court, the election for which the candidates sought ballot access had passed. Id. at 737 n.8, 94 S.Ct. 1274. In addition, for some of the plaintiffs, sufficient *1309 time had passed since they disaffiliated from their former political party that they now were exempt from the challenged law. See id. at 726-28, 94 S.Ct. 1274. The Supreme Court nevertheless held that the case was not moot because "the issues properly presented, and their effects on independent candidacies, will persist as the California statutes are applied in future elections." Id. at 737 n.8, 94 S.Ct. 1274.
The Court held that the case was not moot without conducting any inquiry into any candidate's intent to run in a future election or the likelihood that the candidate would be subject to the disaffiliation requirement in a future election. See id. This was so even though at least some of the candidates would be subject to the disaffiliation restriction in the future only if they chose to rejoin a political party and then decided to run as an independent candidate before sufficient time had passed since their disaffiliation from the political party. See id. The absence of any discussion about the actual likelihood of the candidates being subject to the disaffiliation requirement in the future means the Court must have treated the fact that the candidates had run in a past election as sufficient to establish a reasonable likelihood that they would be subject to the challenged restriction again in the future. See id. ; see also Moore v. Ogilvie , 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) (concluding-without requiring evidence that any plaintiff would run in a future election and despite a dissent arguing that the case was moot without such evidence-that a challenge to a ballot access requirement for independent candidates was not moot because even though the relevant "election is over, the burden ... remains and controls future elections").
Subsequent Supreme Court cases confirm that in the specific context of a challenge to a ballot access requirement, courts can infer from the fact that a party previously ran as a candidate a reasonable expectation that he will run in a future election and again be subject to the challenged requirement. In Norman v. Reed , a group of voters who were organizing a new political party challenged an Illinois law requiring them to collect a certain number of signatures for the party to be listed on the election ballot. 502 U.S. 279, 283-84, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992). By the time the case reached the Supreme Court, the election was over. Id. at 287, 112 S.Ct. 698. Yet the Supreme Court held that the case was not moot because "[t]here would be every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints if [the Court] should fail to resolve the constitutional issues" that arose during the first election. Id. at 288, 112 S.Ct. 698. Again, the Court reached this conclusion without requiring evidence that the voters would try to get the party on the ballot in future elections. Instead, it appears that the Court inferred from the voters' past attempt to seek ballot access that they would do so in the future. See id. ; see also Int'l Org. of Masters, Mates & Pilots v. Brown , 498 U.S. 466, 473, 111 S.Ct. 880, 112 L.Ed.2d 991 (1991) (holding that union officer candidate's challenge to union's election rule was not moot because the candidate "has run for office before and may well do so again," without addressing whether there was any evidence of the candidate's actual intent to run again).
I acknowledge that in other election-related cases the Supreme Court has held that the same complaining party rule was satisfied where the plaintiffs presented evidence that they would engage in conduct that would make them subject to the challenged restriction in a future election. See Davis v. FEC , 554 U.S. 724, 735-36, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) ;
*1310 FEC v. Wis. Right to Life, Inc. , 551 U.S. 449, 463-64, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007) ; Meyer v. Grant , 486 U.S. 414, 417 n.2, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988). The Supreme Court held in these cases that evidence of the candidate's intent was sufficient to satisfy the same complaining party rule, but it has never held that such evidence was necessary to satisfy the rule. Nor did the Supreme Court cast any doubt in these cases about its decisions in Storer , Reed , or other cases in which it required no evidence of the plaintiff's intent to run in a future election.
The majority contends that the Supreme Court's decision in Brockington v. Rhodes , 396 U.S. 41, 90 S.Ct. 206, 24 L.Ed.2d 209 (1969) (per curiam), illustrates that a more searching inquiry into a plaintiff's intent to run in a future election is required. But Brockington does not control here. In that case, a candidate challenged an Ohio ballot access law requiring independent candidates to gather signatures from 7% of the qualified voters in the district. Id. at 41-42, 90 S.Ct. 206. The candidate obtained signatures amounting to a little over 1% and then petitioned in Ohio state court for a writ of mandamus commanding the election board to certify his nominating petition as sufficient and "to do all things necessary to place [his] name upon the ballot." Id. at 42, 90 S.Ct. 206. He sought no declaratory relief. Id. at 42, 90 S.Ct. 206. By the time the appeal reached the Supreme Court, the election was over. The Court concluded that the case was moot "in view of the limited nature of the relief sought" because with the election over it was "now impossible to grant the [candidate] the limited, extraordinary relief he sought in the Ohio courts." Id. at 43-44, 90 S.Ct. 206. Because the Supreme Court's mootness decision in Brockington was driven by the candidate's decision to seek only mandamus relief, the Court had no occasion to address what evidence would be sufficient for candidates to satisfy the same complaining party rule when they seek a declaratory judgment that a ballot access requirement is unconstitutional. See id.
The majority also relies on the Supreme Court's decision in Illinois State Board of Elections v. Socialist Workers Party , 440 U.S. 173, 175-76, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979), to support its assertion that to satisfy the same complaining party rule candidates must provide direct evidence of their intent regarding future elections. But that case does not advance the majority's position. After Chicago's mayor died in office, several new political parties and an independent candidate sought to be included on the ballot for the special mayoral election. Id. at 177-78, 99 S.Ct. 983, 992. Together they brought a lawsuit against the Chicago Board of Elections and the State Board of Elections challenging a state law requiring independent candidates and new political parties to gather more than 35,000 signatures before they could be included on the mayoral ballot. Id. Before the election occurred, the district court permanently enjoined enforcement of the state law. The Chicago Board of Elections and the plaintiffs then reached a settlement agreement, which the district court incorporated into an order, that reduced the required number of signatures for new political parties and independent candidates. Id. at 180, 99 S.Ct. 983, 992. The State Board of Elections filed a motion to vacate the district court's order, arguing that the Chicago Board lacked the authority to settle the dispute without its permission. Id. The district court denied the motion. Id. The State Board then appealed the district court's orders permanently enjoining enforcement of the ballot access requirement and refusing to vacate the order incorporating the settlement agreement. Id.
The Supreme Court affirmed the district court's injunction, holding that the ballot *1311 access requirement was unconstitutional. Id. at 187, 99 S.Ct. 983, 992. Separately, the Court held that the State Board's challenge to the Chicago Board's settlement authority was moot. Id. at 187-88, 99 S.Ct. 983, 992. The capable-of-repetition-yet-evading-review exception to the mootness doctrine did not apply, the Court held, because there was no "reasonable expectation" that the Chicago Board would engage in the challenged conduct-settling litigation without the approval of the State Board-in the future. Id. The mootness analysis in Illinois State Board of Elections addressed only whether the Chicago Board was likely to attempt to resolve future litigation without agreement from the State Board, not whether future candidates would be subject to the ballot access restriction. I fail to see how the case tells us anything about the application of the same complaining party requirement here.
By requiring evidence of intent to run in a future election from a plaintiff in Hall's position, the majority creates a circuit split. Seven other circuits-like the Supreme Court in Storer -have found candidate challenges not moot, despite the election at issue having taken place, without requiring any evidence about the candidate's intent to run in future elections. See Kucinich v. Tex. Democratic Party , 563 F.3d 161, 165 (5th Cir. 2009) (holding that a candidate's challenge to a political party's oath requirement was not moot even though his counsel "could not state whether his client ha[d] an intention to run ... in the future and declined to express a belief that [plaintiff] w[ould] again be subject to the party's oath requirement"); Lawrence v. Blackwell , 430 F.3d 368, 371-72 (6th Cir. 2005) (concluding that a challenge to a ballot access requirement was capable of repetition yet evading review even though the plaintiff had "not specifically stated that he plan[ned] to run in a future election"); Merle v. United States , 351 F.3d 92, 94-95 (3d Cir. 2003) (concluding that there was a reasonable expectation that a postal worker, who had sought to run for Congress but was barred by federal law from running for partisan political office, would be subject to the challenged law again even though he failed to allege that he intended to run in a future election); Schaefer v. Townsend , 215 F.3d 1031, 1033 (9th Cir. 2000) (concluding that case was not moot "without examining the future political intentions of the challenger[ ]"); Vote Choice, Inc. v. DiStefano , 4 F.3d 26, 37 n.12 (1st Cir. 1993) (holding that controversy was not moot because the candidate had "not renounced possible future candidacies, and politicians, as a rule, are not easily discouraged in the pursuit of high elective office"); McLain v. Meier , 637 F.2d 1159, 1162 n.5 (8th Cir. 1980) ("Regardless of McLain's candidacy in any future election, election law controversies tend not to become moot"). The decisions of our sister circuits uniformly reflect that "in an election case the court will not keep interrogating the plaintiff to assess the likely trajectory of his political career." Majors v. Abell , 317 F.3d 719, 723 (7th Cir. 2003). No circuit besides ours has taken a contrary position.
The majority tries to distinguish Storer and the decisions from every other circuit on the ground that these cases involved challenges to election laws or regulations in the context of regularly scheduled elections, but this case involves a challenge to a special election. The majority argues that because special elections occur less frequently, we cannot look to cases applying the same complaining party rule to regularly scheduled elections, which will reoccur with predictable regularity. But the majority cites no authority to support its position. In the absence of any indication from the Supreme Court or even persuasive authority from another circuit to support it, I would not create a different standard for special elections. I would instead *1312 follow the Supreme Court's analysis and the similar path taken by every other circuit. I would conclude that the same complaining party rule is satisfied in this case because there is a reasonable expectation that Hall will be subject to Alabama's ballot access requirement in a future special election based on the fact that he ran as an independent candidate in a previous special election.
II. Even if Candidates Must Prove Their Intent to Run in a Future Election to Satisfy the Same Complaining Party Rule, Hall Has Carried This Burden.
Even assuming the majority is correct-that to satisfy the same complaining party rule in the context of a special election candidates must submit some evidence of their intent to run for office, which will subject them to the challenged requirement in the future-Hall has met this burden. The majority concludes there is only a "theoretical possibility" that Hall would be subject to the ballot access requirement in a future special election. Maj. Op. at 1304. I disagree.
The majority so concludes because special elections for U.S. House of Representatives seats historically have occurred too infrequently in Hall's home district to say that there is a reasonable expectation that one will occur again during his lifetime. But even granting the majority that there is no reasonable expectation that a special election will occur in Hall's own district during his lifetime, we must consider whether a reasonable expectation exists that he will run in a future special election for a House seat anywhere in Alabama. As a resident of Alabama, Hall is eligible to represent any district in the State; there is no legal bar to his running for a House seat in a district other than his home district. See U.S. Const. art. I, § 2, cl. 2. Hall's evidence is sufficient to establish a reasonable expectation that he will run for a House seat in a future Alabama special election (whether it is held in his home district or another district) and thus be subject to the same ballot access requirement.
There is no dispute that we can reasonably expect Alabama to hold a special election for an open seat in the U.S. House of Representatives in the future. There will be special elections when members of the House resign for various reasons: to accept other appointments or positions (like Alabama Congressman Jo Bonner or Georgia Congressman Tom Price), due to the fallout from public scandal (like Michigan Congressman John Conyers or Texas Congressman Blake Farenthold), or for personal reasons (like Pennsylvania Congressman Charlie Dent). Seats unfortunately will become vacant when representatives die while in office (like Mississippi Congressman Alan Nunnelee). Although we do not know when the next such special election will occur in Alabama, we know that another vacancy will occur and need to be filled through a special election.[1] Since 1941, the State of Alabama has held six special elections for House seats, meaning special elections historically have occurred on average once every 12 years. Given this frequency and the fact that Hall was only 39 years old during the last special election, we can reasonably expect a future special election for an Alabama House seat to occur in Hall's lifetime. The majority accepts the validity of this type of analysis.
*1313 See Maj. Op. at 1298 (looking to historical evidence about the frequency in Alabama of special elections for the House of Representatives to assess whether there is a reasonable expectation of a future special election occurring in Hall's lifetime).
The next question is whether, for purposes of applying the same complaining party rule, it is reasonably likely that Hall will run as an independent candidate in such an election. Despite the fact that the Constitution permits Hall to represent any House district in Alabama, see U.S. Const. art. I, § 2, cl. 2, the majority concludes that Hall would not run for a seat outside his home district because he would be viewed as a "carpetbagger" and thus would be unlikely to win. Maj. Op. at 1305. But the majority offers no authority supporting its assumption that a candidate who lives outside a district cannot win an election there. I cannot agree with the majority's unsupported speculation.[2]
But the probability of a candidate winning an election for a seat outside her home district is really beside the point. As the majority acknowledges, Hall testified that he "wants to run in any special election for a U.S. House seat in Alabama regardless of his residence" in another district. Id. at 1298. It is not our place to reject this direct evidence, essentially making a finding of fact that he would not do so. See Pullman-Standard v. Swint , 456 U.S. 273, 291, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("Factfinding is the basic responsibility of district courts, rather than appellate courts. ..." (alteration adopted) (internal quotation marks omitted) ); Norelus v. Denny's, Inc. , 628 F.3d 1270, 1293 (11th Cir. 2010) ("[A]s everyone knows, appellate courts may not make fact findings.").
Furthermore, the majority simply assumes that a candidate will run in an election only if she can win. The majority's supposition ignores that independent and third party candidates may choose to run in elections even though they have no realistic chance of winning. As the Supreme Court has explained, these candidates may run not because they believe that they can win the election, but rather to use the "election campaign [as] a means of disseminating ideas" outside those presented by the two dominant political parties. Ill. State Bd. of Elections , 440 U.S. at 186, 99 S.Ct. 983. Hall may run as an independent candidate in a future special election to try to introduce new political ideas and help frame the issues; I cannot agree with the majority that Hall is unlikely to run in an election unless he can win.
By requiring Hall to show that he has a chance not only to run in a future election, but also to win it, the majority adds an element to the same complaining party inquiry that no other court has adopted. In every election-related Supreme Court case discussing the evidence that did or did not satisfy the same complaining party rule, the Court has held that the plaintiffs satisfied the rule when they introduced a statement of intent to participate in a future election. See Davis , 554 U.S. at 736, 128 S.Ct. 2759 (holding that there was a reasonable *1314 expectation that a congressional candidate would be subject to a federal campaign finance law in the future when he "made a public statement expressing his intent" to run for the seat in the future); see also Wis. Right to Life, Inc. , 551 U.S. at 463, 127 S.Ct. 2652 (concluding that there was a reasonable expectation that an ideological organization would again be subject to a federal law that restricted the content of its political advertisements in the period shortly before primary and general federal elections because the organization "credibly claimed that it planned on running materially similar future targeted broadcast ads ... within the blackout period"); Meyer , 486 U.S. at 417 n.2, 108 S.Ct. 1886 (holding, without considering the likelihood that voters would actually approve the initiative, that it was reasonable to expect that proponents of a ballot initiative would be subject to a state law that prohibited paying petition circulators when, despite the initiative's failure, the proponents "continue[d] to advocate its adoption and plan future attempts to obtain the signatures necessary to place the issue on the ballot"). Not one of these cases required-or even hinted-that the plaintiffs had to establish the likelihood that they would win (or the position they supported would prevail) in a future election to satisfy the same complaining party requirement. I cannot agree with the majority's decision, which effectively adds this additional requirement to the same complaining party rule, to go well beyond Supreme Court precedent.
I am concerned that by imposing more stringent requirements on candidates seeking to challenge ballot access laws, the majority's decision will effectively close the courthouse doors to future independent and third party candidates and voters. As an example, when the next special election for a House seat in Alabama is held, to gain access to the ballot independent and third party candidates again will have to satisfy an onerous signature requirement in a significantly compressed time frame. If Hall-or any other candidate or voter in that future special election-brings a lawsuit raising a constitutional challenge to the signature requirement, due to the nature of such vacancies there will be very little time to litigate the challenge before the election passes and the case becomes moot. The plaintiff will be unable to rely on the capable-of-repetition-yet-evading-review exception because, using the majority's logic, there will never be a reasonable expectation of the candidate running in another special election in his home district (because such an election is unlikely to occur again during the plaintiff's lifetime) or in a special election in another district (because the plaintiff will be unlikely to win).[3]
The majority acknowledges that "courts are understandably loathe to permit a situation in which a governmental restriction is effectively immune from judicial review and correction, because the duration of the restriction is too short to be fully litigated before it expires." Maj. Op. at 1306. I agree. The majority suggests, in dicta , that its reasoning will not create such a situation because in a future special election a candidate or voter may challenge Alabama's ballot access requirements in a class action. Id. at 1306. I am far less comfortable that a class action would provide a viable option. Under the majority's logic, a future class action challenging the ballot access restriction brought during the next special election would, like Hall's *1315 action here, become moot after the special election occurs. The majority's reasons for concluding there is no reasonable expectation that a special election would occur again in Hall's district during his lifetime likewise would indicate that there is no reasonable expectation that a special election would occur again in any class member's district during her lifetime. The majority suggests that the class could consist of independent voters and candidates in all districts in Alabama, but it fails to explain how the claims of class members in other districts where no special election was pending would be justiciable.[4]
By making Alabama's ballot access requirements, as applied in the context of special elections, effectively immune from judicial review and correction, the majority's decision closes the courthouse doors to independent and third party candidates and voters. These citizens are left with no meaningful recourse in the courts to challenge these restrictions, even when the restrictions impose substantial burdens on First Amendment and Fourteenth Amendment rights to vote and to associate for political purposes. I cannot agree with the majority that we should depart from Supreme Court precedent and the decisions of all the other circuits to address this issue by holding that ballot access restrictions curtailing these rights-which "rank among our most precious freedoms"-are effectively unreviewable. Williams v. Rhodes , 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).
* * *
I would hold that the case is not moot under the capable-of-repetition-yet-evading-review exception. There is a reasonable expectation that Hall will be subject to Alabama's ballot access signature requirement in a future special election. I would draw this conclusion based solely on the fact that Hall ran as an independent in the special election at issue here. Alternatively, even if I were to accept the majority's position that Hall was required to produce some evidence showing his intention to run in a future election, I would conclude that he met his burden given his testimony that he plans to run in future elections for any open House seat in the State of Alabama.
Because I would hold that the case is not moot, I would address on the merits Hall's claim that Alabama's ballot access requirement is unconstitutional as applied to the special election here. States certainly have "important and compelling interests in regulating the election process and in having ballot access requirements." Swanson , 490 F.3d at 902 (internal quotation marks omitted). But Alabama's ballot access restriction "implicate[s] the constitutional rights of voters, especially those with preferences outside the existing parties, to associate and cast their votes effectively." Id. Weighing these interests, I agree with the district court that Alabama's ballot access requirement is unconstitutional as applied in the context of a special election for the House of Representatives when there were only about four months between the announcement of the vacancy and the deadline for an independent or third party candidate to submit signatures to appear on the ballot, and the candidate was further limited to a 106-day *1316 period to collect signatures. I would affirm the district court's judgment.
Respectfully, I dissent.

I note that even in cases outside the election context, the Supreme Court has recognized that to satisfy the same complaining party rule a plaintiff is not required to "establish[ ] with mathematical precision the likelihood" that he will be subject to the same challenged government action. Honig v. Doe , 484 U.S. 305, 320 n.6, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

Indeed, an internet search for members of Congress who live outside the districts they represent calls into question the majority's assumption that candidates for House seats outside the district where they reside cannot win elections. The results of such a search include reports showing that in June 2017 at least 20 members of Congress were registered to vote (meaning their official residences were located) outside the districts they were elected to represent. I acknowledge the possibility that some of these representatives moved outside their districts after being elected. But even accepting this possibility, the fact that representatives are willing to live outside the districts they were elected to represent suggests that there no significant stigma attached to it.

It seems to me that a candidate who was unable to gather the number of signatures required to appear on the ballot would never be able to show that he was likely to win a future election. The effect of the majority's decision, then, is to insulate ballot access laws from judicial review.

By pointing to a class action as a suitable alternative, the majority implicitly concedes that a special election can reasonably be expected to occur in at least one House district in Alabama during some class member's lifetime. This argument seems to me to be contrary to the majority's contention that it is "extremely unlikely" that Hall would have the opportunity to run in another special election for a House seat in the same district during his lifetime. Maj. Op. at 1306 n.10.